## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LET US CLAIM CONSULTANTS
INSURANCE, INC. and RAMON
RODRIGUEZ,**

        **Plaintiffs,**

**v.**                                   **Case No: 6:23-cv-2378-PGB-EJK**

**CESAR CEPEDA and LET US
ADJUST CONSULTANT
INSURANCE LLC,**

        **Defendants.**

_____/

## <u>ORDER</u>

This cause comes before the Court on Defendants Cesar Cepeda and Let Us Adjust Consultant Insurance LLC's (collectively "**Defendants**") Motion to Dismiss Amended Complaint (Doc. 23 (the "**Motion**")). Plaintiffs Let Us Claim Consultants Insurance, Inc., and Ramon Rodriguez (collectively "**Plaintiffs**") filed a response in opposition (Doc. 26 (the "**Response**")), and the matter is now ripe for review. Upon consideration, the Motion is due to be granted in part and denied in part.

## I.    BACKGROUND[1]

This is an action for trademark infringement, breach of contract, and misappropriation of trade secrets.[2] (Doc. 15). Plaintiff Ramon Rodriguez ("**Plaintiff Rodriguez**") is the owner of Let Us Claim Consultants Insurance, Inc. ("**Let Us Claim**" or "**corporate Plaintiff**"), a company that has been in the business of processing insurance claims since 2008. (*Id.* ¶¶ 6, 9). Plaintiff Rodriguez also owns three (3) registered trademarks pertaining to Let Us Claim (the "**subject marks**"), including a mark comprised of its full name—Let Us Claim Consultants Insurance, Inc.—as well as two (2) designs containing variations on this name. (*Id.* ¶ 6; Doc. 15-1).

According to the FAC, in June 2019, Defendant Cesar Cepeda ("**Defendant Cepeda**") entered a written Subcontractor Agreement (Doc. 15-2 (the "**Contract**")) with Let Us Claim. (*See* Doc. 15, ¶¶ 16–17). Defendant Cepeda was also appointed a public adjuster apprentice for Let Us Claim.[3] (*See id.* ¶ 17).

---

[1]   This account of the facts comes from Plaintiffs' Amended Complaint. (Doc. 15 (the "**FAC**")). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[2]   The Court highlights the imprecise pleading throughout the FAC, which is described *infra*, and which the Court instructs Plaintiffs to correct upon repleader. (Doc. 15). As a result of this imprecise pleading, the Court was left to attempt to parse out a precise synopsis of the allegations here.

[3]   Although the Contract states that Defendant Cepeda's duties were to be in "sales," the FAC indicates that he was appointed a public adjuster apprentice for Let Us Claim. (*See* Doc. 15-2, p. 2; Doc. 15, ¶ 17).

However, Defendant Cepeda resigned from Let Us Claim in September 2021. (*Id.* ¶ 18).

Following this resignation, Defendants began "using LET US ADJUST as a trademark on identical goods and services" to those offered by Plaintiffs. (*Id.* ¶ 15). This has led to multiple instances of confusion by clients and other business contacts for both Plaintiff Let Us Claim and Defendant Let Us Adjust Consultant Insurance LLC ("**Let Us Adjust**" or "**Defendant LLC**"). (*Id.* ¶¶ 24–27, 30). Further, Defendants possess Let Us Claim's client database, and Defendant Cepeda has contacted multiple of Let Us Claim's former clients to entice their business after disparaging Let Us Claim. (*See id.* ¶¶ 29, 31). Finally, in the aftermath of Defendant Cepeda's resignation, at least two (2) former employees of Let Us Claim began "working with LET US ADJUST." (*Id.* ¶¶ 19–20, 26).

Considering these factual allegations, Plaintiffs filed the FAC, which contains the following eight (8) counts: (I) injunctive relief; (II) unfair competition under the Lanham Act; (III) trademark infringement and false designation of origin under the Lanham Act; (IV) common law trademark infringement; (V) breach of contract; (VI) violations of the Florida Unfair and Deceptive Trade Practices Act ("**FUDTPA**") under Florida Statute § 501.201; (VII) violations of the Florida Uniform Trade Secrets Act ("**FUTSA**") under Florida Statute § 688; and (VIII) violations of the federal Defend Trade Secrets Act ("**DTSA**") under 18 U.S.C. § 1836. (*Id.* ¶¶ 44–84).

In the Motion, Defendants argue that the FAC must be dismissed in its entirety, as it is an improper shotgun pleading, and further argue that Counts II through VIII must be dismissed for their failure to state a claim. (Doc. 23).

## II.    LEGAL STANDARD

### A.    Shotgun Pleadings

The Eleventh Circuit has "been roundly, repeatedly, and consistently condemning [shotgun pleadings] for years . . . ." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 (11th Cir. 2008), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There are four (4) acknowledged types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Moreover, a court may not "parse" a shotgun pleading "in search of a potentially valid claim" because doing so "would give the appearance of lawyering for one side of the controversy and, in the process, cast [the court's] impartiality in doubt." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1355 n.6 (11th Cir. 2018).

**B.      Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual

allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III.   DISCUSSION

### A.   **Shotgun Pleading**

The instant Complaint is a quintessential example of the fourth type of shotgun pleading described in *Weiland*. *See* 792 F.3d at 1321–23. As Defendants note in the Motion, much of the FAC's ambiguity stems from Plaintiffs' designation of the term "CEPEDA" as referring to both Defendants *collectively*, despite this being the surname of Defendant Cepeda. (Doc. 15, p. 1; Doc. 23, p. 7). This designation is not only conceptually difficult for the FAC's reader, but it is also incongruent with Plaintiffs' use of the term. For example, although an important portion of the FAC's factual allegations appear to predate Defendant Let Us Adjust's existence as an entity, Let Us Adjust is nonetheless incorporated into these allegations by references to Defendant Cepeda. (*See, e.g.*, Doc. 15, ¶¶ 2, 17–18).

Additionally, much like the Court, Plaintiffs appear to have selected "LET US ADJUST" as a shorthand for the Defendant LLC's proper name. (*See, e.g.*, *id.* ¶¶ 12, 14, 19–26, 28–32). However, Plaintiffs do not officially designate this shorthand, which is especially problematic in the context of a trademark infringement case, where the similarity of the Defendant LLC's name to Plaintiffs' subject marks is directly at issue. (*See* Doc. 15). Likewise, Plaintiffs aver that "Defendants . . . have breached a contract entered into between the Parties." (*Id.* ¶ 2). Yet, the term "Parties" is not defined, and logically cannot include Let Us

Adjust, as, from what the Court can glean, that entity did not yet exist at the time of the Contract's formation. (*See id.*).

These ambiguities wreak additional havoc in the counts, which generally do not identify the Defendant(s) to which they pertain. (*See id.* ¶¶ 44–84). At first glance, Count V for breach of contract would appear to be the exception, as Defendant Cepeda is repeatedly referenced therein. (*See id.* ¶¶ 64–68). However, Count V, too, is rendered ambiguous by Plaintiffs having designated "CEPEDA" as a shorthand for both Defendants. (*See id.* at p. 1). The FAC fares no better at distinguishing between which claim(s) are brought by which Plaintiff(s). (*See, e.g.*, *id.* ¶¶ 44–50 (asserting a claim for injunctive relief without naming which Plaintiff brings the count and alternating between the singular and plural use of the word "Plaintiff" in the count)).

As a result, the FAC is dismissed as an impermissible shotgun pleading. Plaintiffs shall correct the deficiencies identified herein on repleader.

## B.    Rule 12(b)(6)

The Court addresses Defendants' arguments that Plaintiffs have failed to state a claim as to Count II through Count VIII in turn.

### 1.   *Lanham Act and Common Law Trademark Infringement Claims*

Defendants first attack Plaintiffs' claims brought under the Lanham Act for unfair competition (Count II) and trademark infringement and false designation of origin (Count III). (Doc. 23, pp. 9–12). Defendants contend that Count IV also

fails to state a claim, citing that common law trademark infringement claims are analyzed in the same manner as Lanham Act claims. (*Id.* at p. 13).

To start, Defendants argue that Let Us Claim lacks standing to bring the Lanham Act claims, as the FAC only alleges Plaintiff Rodriguez' ownership of the subject marks and fails to allege such ownership by Let Us Claim. (*Id.* at pp. 9–10). In their Response, Plaintiffs note they have alleged that Let Us Claim "is the solely authorized party permitted to use" the subject marks. (Doc. 26, pp. 5–6 (quoting Doc. 15, ¶ 8)). Plaintiffs argue this allegation shows Let Us Claim is the exclusive licensee of the subject marks, establishing its standing to sue under the Lanham Act. (*Id.*).

Plaintiffs' Lanham Act claims arise under two distinct provisions of the Act: 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114. (Doc. 15, ¶¶ 52–57). This distinction is relevant to the issue of standing.

First, a plaintiff can sue under § 1125(a) even where an asserted trademark has not been federally registered. This provision expressly states that suit may be brought "by any person who believes that he or she is [damaged] or is likely to be damaged" by alleged violations of § 1125(a). This language has been interpreted to confer standing to any plaintiff who meets two requirements. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–32 (2014). First, the plaintiff must fall within the zone of interests protected by the Lanham Act by alleging "an injury in reputation or sales" caused by the purported violation. *Id.* Second, the

plaintiff's injuries "must be proximately caused by violations of the statute." *Id.* at 132.

By contrast, § 1114 forbids certain conduct with respect to federally registered trademarks, and thus states that parties who violate this provision "shall be liable in a civil action *by the registrant* for the remedies hereinafter provided." § 1114(1) (emphasis added). The term "registrant" is defined by the Lanham Act to include a registrant's "assigns." 15 U.S.C. § 1127; *see also Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 158–60, 159 n.8 (1st Cir. 1977) (noting that an "exclusive licensee" of a trademark is an "assignee" and therefore has standing to sue under § 1114(1), and collecting sources in support); *Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1273 (11th Cir. 2013) (citing *Quabaug*, 567 F.2d at 159 for this principle).

Plaintiffs have adequately alleged Let Us Claim's standing to sue under § 1125(a), as they have alleged injuries to Let Us Claim's reputation and sales proximately caused by Defendants' violations of the Lanham Act. (*See, e.g.*, Doc. 15, ¶¶ 37–39). Moreover, the Court finds that, in viewing the FAC in the light most favorable to the Plaintiffs, and drawing all reasonable inferences in their favor, Plaintiffs have sufficiently alleged that Let Us Claim is the "exclusive licensee" with respect to the subject marks. *See Iqbal*, 556 U.S. at 678; (Doc. 15, ¶¶ 6, 8). Accordingly, Plaintiffs have adequately alleged Let Us Claim's standing to sue under § 1114.

Next, Defendants argue that Counts II and III fail to state a claim because Plaintiffs do not allege that they have registered a trademark in "the standalone phrase 'LET US CLAIM,'" despite repeatedly citing to the "LET US CLAIM Marks" in the FAC. (Doc. 23, p. 11 (citing Doc. 15, ¶ 40)). However, as the Court has noted above, § 1125(a) does not require a plaintiff to hold a federally registered trademark to state a claim. Moreover, the Court finds that Plaintiffs' failure to allege that they have registered the phrase "LET US CLAIM," despite referring to the "LET US CLAIM Marks" throughout the FAC,[4] is not fatal to Plaintiffs' claim under § 1114. First, Plaintiffs expressly designate "LET US CLAIM" as a shorthand for the corporate Plaintiff's proper name in the FAC. (Doc. 15, p. 1). Additionally, when attaching the actual registrations for the subject marks as exhibits, Plaintiffs indicate they are attaching copies of the "US Registrations for the 'LET US CLAIM['] Marks." (*Id.* ¶ 7). As a result, it is a reasonable inference from the allegations that Plaintiffs' references to the "LET US CLAIM Marks" refer to the subject marks. *See Iqbal*, 556 U.S. at 678; (Doc. 15, ¶¶ 6–7).

Lastly, Defendants assert that Plaintiffs have failed to allege Defendants' use of the *subject marks*, and that Plaintiffs, at most, aver that Defendants have "used the phrase 'LET US ADJUST.'"[5] (Doc. 23, p. 12). As a result, Defendants posit that

---

[4]   (*See* Doc. 15, ¶¶ 7–8, 13–14, 32, 36, 38, 40–41). The Court notes that the word "marks" is inconsistently capitalized by Plaintiffs in the cited allegations.

[5]   As discussed in Section III.A, *infra*, one deficiency that contributes to the Court's finding that the FAC is a shotgun pleading is Plaintiffs' use of "LET US ADJUST" as an undesignated shorthand for the Defendant LLC. This problem causes a related lack of clarity in Plaintiffs' claims brought under Counts II, III, and IV. Specifically, it is not clear whether Plaintiffs object to Defendants' use of the name "Let Us Adjust Consultant Insurance LLC," to "Let Us Adjust"

Plaintiffs do "not plausibly allege that Defendants have []used the mark which [P]laintiffs possess[] in a manner that is likely to confuse consumers." (*Id.*). This argument likewise fails.

A plaintiff may bring a Lanham Act claim premised upon a defendant's use of a mark that is similar, though not identical to, the plaintiff's registered mark(s), where that use is likely to confuse consumers. *See* §§ 1114(1)(a), 1125(a)(1). Additionally, in the Eleventh Circuit, whether the alleged infringement causes a "likelihood of confusion" is a question of fact for the jury. *E.g.*, *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972–73 (11th Cir. 1983); *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 839–40 (11th Cir. 1983). Indeed, there are a "number of factors which should be considered" by the finder of fact in making this determination, including "the type of trademark, the similarity of design, the similarity of the product [or service], the identity of the retail outlets and purchasers, the similarity of advertising media used, defendant's intent, and actual confusion." *Harland*, 711 F.2d at 972 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 506 (5th Cir. 1980)).[6] As a result, the question

---

as a shorthand for the Defendant LLC, or both. To the extent curing the deficiencies that render the FAC a shotgun pleading does not clarify the matter, Plaintiffs are ordered to provide a more definite statement regarding *precisely what term(s)* Defendants have used that serve(s) as the basis for Counts II, III, and IV. *See Anderson v. Dist. Bd. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67, 367 n.5 (11th Cir. 1996) (noting a district court should *sua sponte* strike the pleadings and order a plaintiff to make a more definite statement where the pleadings fail to give a defendant adequate notice regarding what is alleged).

[6] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

of whether the alleged infringement causes a likelihood of confusion is often "the critical question" in Lanham Act cases. *Id.*

Here, Plaintiffs plead abundant factual matter supporting the likelihood of confusion. For example, Plaintiffs allege that Defendants are providing "identical goods and services" as Plaintiffs, since "Plaintiffs are engaged in the business of claim adjustments in the field of insurance" and Defendants are also engaged in "insurance claims adjustment processing." (Doc. 15, ¶¶ 9, 15); *see Harland*, 711 F.2d at 972. Correspondingly, Plaintiffs allege that the parties' services are marketed in "similar channels of commerce" and to "similar, if not identical customers." (Doc. 15, ¶ 34); *Harland*, 711 F.2d at 972. Plaintiffs' allegations relatedly imply that there has been overlap among the parties' clientele. (*See* Doc. 15, ¶¶ 24–25, 30).

Plaintiffs further aver that Defendants' infringement of the subject marks was an intentional "attempt to trade off the goodwill of LET US CLAIM's registered Marks." (*Id.* ¶ 22); *see Harland*, 711 F.2d at 976 ("Indeed, the former Fifth Circuit once stated that 'if a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that alone 'may be sufficient to justify the inference that there is a confusing similarity.'" (quoting *Exxon*, 628 F.2d at 505)).

Finally, Plaintiffs allege multiple instances of actual confusion caused by Defendants' purported infringement, including one (1) instance where "Plaintiffs received a copy of a check from Progressive"—an apparent client—"that was re-

issued to them after having been erroneously made out to Defendants." (Doc. 15, ¶¶ 24–27, 30); *see Harland*, 711 F.2d at 978 ("Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (quotation marks omitted))).

A motion to dismiss brought under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle[] them to relief." *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Given the extensive factual allegations supporting the likelihood of confusion, the Court cannot find that such is the case here.

Accordingly, Defendants' arguments that Plaintiffs have failed to state claims under the Lanham Act in Counts II and III fail. Because Defendants' argument that Count IV for common law trademark infringement is premised upon the success of Defendants' arguments regarding the Lanham Act claims, this argument also fails. (*See* Doc. 23, p. 13).

## 2. *Breach of Contract Claim*

The Court addresses Defendants' two (2) arguments seeking dismissal of Plaintiffs' breach of contract claim, asserted in Count V, in succession. First, Defendants contend that this count should be dismissed because Plaintiffs fail to "plead with any plausibility a material breach" of the Contract. (*Id.* at p. 14).

Under Florida law, to state a claim for breach of contract, a plaintiff must "plead and establish (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).[7]

In Count V, Plaintiffs allege that Defendant Cepeda[8] breached the Contract in the following ways:

> Defendants breached the agreement by, amongst other things, hiring or attempting to hire Plaintiff's employees, using Plaintiff's customer database for their own purposes after the Agreement was terminated, [and] failing to return the database after termination.
>
> . . . .
>
> CEPEDA has breached the Subcontractor Agreement by misappropriating Plaintiff's customer database, by enticing and offering its employees to leave Plaintiff, and by systematically creating a new company with the intention to create an easy transition by fooling the consuming public as to the association and closeness of a confusingly similar trademark for personal gain. In addition, Defendants are using Plaintiffs' brand and name to market their products and services that is of a competitive nature to Plaintiffs. Defendants are using[] and sharing customer contact lists in furtherance of its business competition, and is doing so unfairly and in violation of contractual promises.

---

[7]  In the Motion, Defendants represent that Florida law applies to the Contract, and Plaintiffs do not dispute this representation in their Response. (Doc. 23, p. 14; Doc. 26, pp. 9–10).

[8]  The Court has already found in *supra* Section III.A that Plaintiffs' unclear and inconsistent references to the parties render the FAC a shotgun pleading. The Court assumes the language in the FAC, including as to Count V, will be corrected upon repleader. Thus, in its analysis of Count V, the Court assesses the merits of Plaintiffs' breach of contract claim against Defendant Cepeda *only*, since Plaintiffs represent that they did not intend to include Defendant Let Us Adjust in this count. (Doc. 26, p. 3).

(Doc. 15, p. 12).[9]

The Court finds the question of whether Plaintiffs have adequately pled a claim for breach of contract to be a close call, again due to the imprecise pleading that plagues the FAC. However, assuming the issues that cause the FAC to constitute a shotgun pleading are corrected upon repleader, the Court finds that Plaintiffs have narrowly stated at least one (1) material breach of the Contract.[10]

While Plaintiffs do not provide direct citations to the material terms at issue, they do attach a copy of the seven (7) page Contract to the FAC. (Doc. 15-2; *see* Doc. 15); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of that pleading for all purposes."). In any event, Defendants seemingly focus on the relevant provision in their Motion. (*See* Doc. 23, p. 15 (quoting Doc. 15-2, p. 5)). One portion of that provision states as follows:

> It is further acknowledged and agreed that following termination of the *Subcontractor's* [Contract] with *Let Us Claim* for any reason, *Subcontractor* shall not . . . disparage *Let Us Claim* or *Let Us Claim's* reputation, or **attempt to create [an] adversarial interest against** *Let Us Claim***.** It is further acknowledged and agreed that following the termination of *Subcontractor's* [Contract] with *Let Us Claim* for any reason, ***Subcontractor* shall not solicit business from** prospective clients whom *Subcontractor* knows called *Let Us Claim*, **current clients**, or clients who have retained *Let Us Claim* preceding *Subcontractor's* termination.

---

[9]   Due to an apparent scrivener's error, there are two (2) paragraphs designated as paragraph 65 on page 12 of the FAC. (*See* Doc. 15, p. 12). The language quoted by the Court is taken from both paragraphs that are designated as paragraph 65. As a result, for clarity, the Court cites to the page on which these excerpts appear rather than the paragraph numbers.

[10]   Because the Court finds that Plaintiffs have adequately alleged at least one (1) material breach of the Contract, Count V survives the motion to dismiss, and the Court does not consider whether Plaintiffs have adequately alleged multiple such breaches.

(Doc. 15-2, p. 5 (emphases added)). In Count V, Plaintiffs allege, in part, that Defendants have violated the Contract by "using . . . [Plaintiffs'] customer contact lists in furtherance of its business competition" with Plaintiffs. (Doc. 15, p. 12). One reasonable inference from this language is that Plaintiffs contend Defendants are using those contact lists to contact their customers in an attempt to entice their business. *Id.*; *see Iqbal*, 556 U.S. at 678. Finally, this interpretation of the alleged breach is supported by Plaintiffs' factual allegation that, "[b]etween 2022 and 2023, Virginia Perez, Matilde Ohlsen, Jose Adrian Cruz, [and] Rosmery Escallon, clients of LET US CLAIM, stated that they were contacted by CEPEDA and/or LET US ADJUST to entice them to do business with them, and disparaged the name of LET US CLAIM." (Doc. 15, ¶ 29). Accordingly, viewing these allegations in the light most favorable to Plaintiffs, Plaintiffs have adequately alleged that Defendant Cepeda materially breached the Contract. *See Iqbal*, 556 U.S. at 678.

Defendants' second argument regarding Count V asserts that the relevant provisions of the Contract are unenforceable, as they are contained within a five (5) year restrictive covenant agreement ("**RCA**"). (Doc. 23, p. 15 n.4). First, Defendants contend that, under Florida law, this five (5) year time restraint is presumptively unreasonable. (*Id.* (citing FLA. STAT. § 542.335(1)(d)(1))). Second, Defendants assert that Plaintiffs have not alleged any legitimate business interest supporting the RCA. (*Id.* (FLA. STAT. § 542.335(1)(c))).

Florida Statute § 542.335 addresses the enforceability of RCAs under Florida law. This statute confirms that an RCA is generally enforceable so long as it is

"reasonable in time, area, and line of business." § 542.335(1). It further creates a rebuttable presumption that a post-employment RCA lasting six (6) months or less in duration is reasonable, while an RCA lasting greater than two (2) years in duration is unreasonable.[11] *See* § 542.335(1)(d)(1).

Importantly, a party seeking enforcement of an RCA must "plead and prove the existence of one or more legitimate business interests justifying" the restriction. § 542.335(1)(b). The statute provides the following specific examples of such "legitimate business interests":

1. Trade secrets, as defined in [FLA. STAT.] s. 688.002(4)[;]
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets[;]
3. Substantial relationships with specific prospective or existing customers . . . or clients[; and]
4. Customer . . . or client goodwill associated with:
    a. An ongoing business or professional practice by way of trade name, trademark, service mark, or "trade dress";
    b. A specific geographic location; or
    c. A specific marketing or trade area.
5. Extraordinary or specialized training.

§ 542.335(1)(b)(1)–(5). Additionally, the party seeking enforcement of the RCA "shall plead and prove" that the restraints are "reasonably necessary to protect the

---

[11] The Court notes that covenants that are "predicated upon the protection of trade secrets" are expressly exempted from this provision. § 542.335(1)(d). Instead, such covenants are subject to a separate set of rebuttable presumptions that are more generous to the party seeking enforcement of the RCA. § 542.335(1)(e) (instructing the court to presume a time restraint of five (5) years or less to be reasonable and a time restraint of greater than ten (10) years to be unreasonable). However, the Court finds in *infra* Section III.B.4 that Plaintiffs have not adequately pled their claims for misappropriation of trade secrets. Moreover, the Court ultimately declines to find the RCA unenforceable at this stage, even assuming the more stringent set of presumptions applies.

legitimate business interest[s]" that justify the restrictions. § 542.335(1)(c). If the party seeking enforcement establishes a prima facie case, the burden shifts to the party opposing enforcement to establish that the restraint is "overbroad, overlong, or otherwise not reasonably necessary" to protect the stated legitimate business interests. *Id.* If the court finds that the restraint is "overbroad, overlong, or otherwise not reasonably necessary to protect" the cited interests, the court "shall modify the restraint and grant only the relief reasonably necessary to protect" those interests. *Id.*

Ultimately, the reasonableness of an RCA is a question of fact for the trial court. *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 896–97 (Fla. 4th DCA 2007) (reversing the trial court's entry of partial summary judgment on the enforceability of an RCA because questions of fact remained). Moreover, under Florida law, "[c]ourts construe a non-compete agreement in favor of providing reasonable protection to legitimate business interests of the party seeking enforcement, not narrowly against the drafter." *Crom, LLC v. Preload, LLC*, 380 F. Supp. 3d 1190, 1200 (N.D. Fla. 2019) (citing FLA. STAT. § 542.335(1)(h)).

At this early stage, the Court does not find that the RCA is unenforceable due to its five (5) year term. (*See* Doc. 15-2, p. 5). Defendant Cepeda's employment by Let Us Claim ended in September 2021. (Doc. 15, ¶¶ 17, 18). The FAC avers that Defendant Cepeda almost immediately engaged in conduct that Plaintiffs claim

breached the Contract, and impliedly, the RCA.[12] (*See id.* ¶ 19 (noting that, between November 2021 and January 2022, two (2) named former employees of Let Us Claim "started working with LET US ADJUST, which violated CEPEDA's agreement not to solicit employees."); *see also id.* ¶ 29 (alleging Defendant Cepeda's improper solicitation of Let Us Claim's clients occurred "[b]etween 2022 and 2023")). Indeed, Plaintiffs allege that Let Us Claim's counsel sent a cease-and-desist letter to Defendants regarding the relevant conduct in February 2022, approximately five (5) months after the termination of Defendant Cepeda's employment by Let Us Claim. (*Id.* ¶ 21). That letter is attached to the FAC and specifically references Let Us Claim's belief that Defendant Cepeda has breached the Contract. (Doc. 15-3).

Thus, Plaintiffs have alleged Defendant Cepeda violated the RCA well within the two (2) year period after the termination of his employment. (*See, e.g.*, Doc. 15, ¶¶ 21, 29). And, while the Contract may attempt to restrict Defendant Cepeda's conduct for a five (5) year term, the Court is empowered to enforce the restriction for a lesser term that it deems reasonable. (Doc. 15-2, p. 5); § 542.335(1)(c). Accordingly, the Court does not find that the RCA is unenforceable due to its five (5) year term.

---

[12] As stated above, Plaintiffs do not specifically cite to the provision of the Contract containing the material terms Plaintiffs allege were breached by Defendant Cepeda. However, Defendants and the Court both identify the RCA as containing the relevant provisions. (*See* Doc. 23, p. 15 (quoting Doc. 15-2, p. 5)).

Nonetheless, the Court does find that Plaintiffs have fallen short of pleading the allegations necessary to enforce the RCA. While it is apparent to the Court that the language in the RCA is likely to have been directed towards protecting "legitimate business interests" identified in Florida Statute § 542.335(1)(b), Plaintiffs fail to expressly identify those interests. (*See* Doc. 15). The Contract also fails to do so. (*See* Doc. 15-2). As a result, Plaintiffs correspondingly fail to aver that the restrictions in the RCA are "reasonably necessary to protect the legitimate business . . . interests justifying the restriction." § 542.335(1)(c); (*see* Docs. 15, 15-2).

For the aforementioned reasons, under the current allegations, the RCA is unenforceable. Accordingly, Plaintiffs' claim for breach of contract fails. However, Plaintiffs may attempt to correct the deficiencies outlined herein on repleader.

### 3.   *FDUPTA Claim*

Next, Defendants contend that Count VI, brought under FDUTPA, fails to state a claim because Plaintiffs have inadequately pled the elements of this claim. (Doc. 23, pp. 19–20).

To assert a claim under the FDUTPA, a plaintiff must establish three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (collecting sources). As Defendants note, however, glaringly absent from Count VI are any allegations asserting either causation or Plaintiffs' actual damages. (Doc. 23, pp. 19–20; *see* Doc. 15, ¶¶ 69–72); *Haun v. Don Mealy Imps., Inc.*, 285 F. Supp.

2d 1297, 1301 (M.D. Fla. 2003) ("A court may not assume . . . that plaintiff can prove facts that [plaintiff] has not alleged or that defendant has violated laws in ways that have not been alleged"). As a result, Plaintiffs have not pled an adequate claim showing their entitlement to relief under the FDUTPA, and Count VI is due to be dismissed.[13] *See* FED. R. CIV. P. 8(a)(2); *Rollins*, 951 So. 2d at 869; *Haun*, 285 F. Supp. 2d at 1307–08 (dismissing the plaintiff's FDUTPA claim because the plaintiff had failed to adequately allege causation and actual damages)

### 4.   *Trade Secrets Claims*

Finally, in the Motion, Defendants contend that Plaintiffs have failed to adequately plead their trade secrets claims brought under the FUTSA (Count VII) and the DTSA (Count VIII). (Doc. 23, pp. 21–24). In these counts, Plaintiffs assert that Defendants have violated the aforementioned statutes by willfully misappropriating Plaintiffs' "trade secret customer lists" ("**customer lists**"). (Doc. 15, ¶¶ 74, 82).

Claims brought under the FUTSA and the DTSA "can be analyzed together." *Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1275 n.6 (M.D. Fla.

---

[13] As a result of this finding, the Court does not reach Defendants' argument that Plaintiffs' FDUTPA claim violates the independent tort doctrine. (Doc. 23, pp. 18–19). Under Florida law, the independent tort doctrine bars a plaintiff from seeking damages in tort that are the same damages that can be recovered for breach of contract, as "a plaintiff may not circumvent the contractual relationship by bringing an action in tort." *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017) (quoting *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994)). In any event, the Court declines to assess this doctrine's applicability at this time, as it requires a close analysis of a plaintiff's breach of contract claim in comparison to the relevant tort claim, and the Court has found that Plaintiffs' FDUTPA claim is inadequately pled.

2020) (citing *M.C. Dean, Inc. v. City of Miami Beach*, 199 F. Supp. 3d 1349, 1353–54 (S.D. Fla. 2016)). Under the FUTSA, a "trade secret" is defined as information that:

> (a)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

FLA. STAT. § 668.002(4)(a)–(b). Under the DTSA, a "trade secret" is defined similarly and in terms of the same two (2) general requirements. *See* 18 U.S.C. § 1839(3). Further, active customer lists have been found to constitute trade secrets where they otherwise meet the statutory definitions for this term. *E.g.*, *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 536 (M.D. Fla. 2003) (citing *Sethscot Collection, Inc. v. Drbul*, 669 So. 2d 1076 (Fla. 3d DCA 1996) (per curiam)); *Freedom Med.*, 469 F. Supp. 3d at 1275.

Defendants argue that Plaintiffs have failed to adequately allege that the customer lists constitute trade secrets and have also failed to plead that Plaintiffs have taken reasonable steps to protect their secrecy. (Doc. 23, pp. 22–24). Plaintiffs largely respond by pointing to relevant provisions in the Contract, which was attached to the FAC. (Doc. 26, pp. 11–14; Doc. 15-2).

Here, Plaintiffs have narrowly failed to state claims for misappropriation of "trade secrets" under the FUTSA and the DTSA. First, there are no *factual allegations* to support the notion that the customer lists "derive independent

economic value . . . from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from [their] disclosure or use." *See* FLA. STAT. § 668.002(4)(a). For example, none of the relevant factual allegations describe the customer lists as being "confidential" or "secret." (*See* Doc. 15, ¶¶ 1–43, 73).

Instead, the FAC's sole allegation referencing the customer lists[14] states that Defendants "possess LET US CLAIM's [client] database, in violation of the [Contract]," that Defendant Cepeda has not returned the client database to Let Us Claim, and that "Defendants continue to use the client database in violation of a covenant not to do so." (*Id.* ¶ 31). Thus, while this allegation implies that Defendant Cepeda was required to *return* the customer lists to Plaintiffs after his termination, and that Defendants were not permitted to *use* those customer lists, it does not allege that those lists derive value from not being generally known. (*See id.*). Put differently, this factual allegation supports Plaintiffs' claims that the customer lists were "misappropriated," but not that they were "trade secrets." (*See id.*).

Moreover, the language contained within the Contract does not aid Plaintiffs in establishing this fact. (*See* Doc. 15-2). Plaintiffs cite to the following provision in the Contract in support of their trade secrets claims, which is found under the heading "NON[-]NEGOTIABLES":

---

[14] The Court assumes that Plaintiffs refer to the same information when they cite to the "client database" in the factual allegations and the "customer lists" under their trade secrets counts. (*Compare* Doc. 15, ¶ 31 *with id.* ¶¶ 74, 82).

g.     PROPERTY: Customer names, contact information, project information, etc., excluding *Subcontractor's* personal property or property privy to itself, will all be considered property of *Let Us Claim* and *Subcontractor* agrees to this regardless of who actually purchased, prepared, or acquired the original property. All such property shall be immediately returned to *Let Us Claim* by *Subcontractor* upon termination of this [Contract] hereunder of any reason.

(Doc. 26, p. 11 (quoting Doc. 15-2, p. 4)). A related, but separate, provision of the Contract required that Defendant Cepeda "return any and all property of *Let Us Claim*" no later than thirty (30) days after his termination. (Doc. 15-2, p. 4). This language merely reinforces the substance of the factual allegation described above. (*See* Doc. 15, ¶ 31). Consequently, it does not advance Plaintiffs' argument that the customer lists are trade secrets. (*See id.*; Fla. Stat. § 668.002(4)(a)).

Finally, the Court notes that the Contract contains several paragraphs under the heading "CONFIDENTIALITY," including the following:

a.     *Subcontractor* will be performing duties that may be unique and sensitive and that[,] in that[,] in the course of said services, *Subcontractor* will have access to and make use of various trade secrets and confidential information of *Let Us Claim*.

b.     *Subcontractor* agrees that it will not disclose to any third party or use any confidential information disclosed to it by *Let Us Claim* or *Let Us Claim's* customers except as expressly permitted in this [Contract]; and that *Subcontractor* will take all reasonable measures to maintain the confidentiality of all confidential information of *Let Us Claim* in its possession or control, which will in no event be less than the measures it uses to maintain the confidentiality of its own information of similar importance.

> c.   *Subcontractor* agrees to not disclose confidential and
> trade secrets information [*sic*] for [the] term of the
> [Contract] and for five (5) years thereafter.
> **Confidential information includes, but is not
> limited to[,] all oral, written, and digital
> information, and any and all information
> gleaned by performance of *Subcontractor's*
> duties to *Let Us Claim* under this [Contract]**.

(Doc. 15-2, p. 5) (emphasis added). While the customer lists would conceptually meet the definition of "confidential information" provided in the final sentence excerpted above, that is because this provision defines every shred of information Defendant Cepeda encountered in his duties as being "confidential." (*See id*.). The Court cannot find that by merely attaching the Contract, which contains this exceedingly broad definition of "confidential information," Plaintiffs have adequately pled that the customer lists are trade secrets. *See* FLA. STAT. § 668.002(4)(a); 18 U.S.C. § 1839(3).

As a result, Plaintiffs have not adequately pled their trade secrets claims under the FUTSA and the DTSA. Plaintiffs may attempt to correct the aforementioned deficiencies in these claims upon repleader.

## IV.   CONCLUSION

For the reasons set forth herein, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion to Dismiss Amended Complaint (Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**.

2.   Plaintiffs' Amended Complaint (Doc. 15) is **DISMISSED WITHOUT PREJUDICE**, in its entirety, as a shotgun pleading.

3.      Counts V through VIII of the Amended Complaint are additionally **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 12(b)(6) for the reasons described herein.

4.      Defendants' Motion to Dismiss Amended Complaint (Doc. 23) is **DENIED** in all other respects.

5.      On or before **August 26, 2024**, Plaintiffs may file a second amended complaint consistent with the directives in this Order. Failure to do so will result in the dismissal of this action without further notice.

**DONE AND ORDERED** in Orlando, Florida on August 5, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties